**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, NINTH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL: (410) 962-3962
FAX: (410) 962-0872

JAMES WYDA  
FEDERAL PUBLIC DEFENDER

COURTNEY D. FRANCIK  
ASSISTANT FEDERAL PUBLIC DEFENDERS

June 30, 2023

The Honorable George L. Russell, III  
United States District Judge  
United States District Court, District of Maryland  
101 West Lombard Street  
Baltimore, Maryland 21201

      Re:    <u>United States v. Darrin Taylor</u>, Nos. GLR-19-311 and GLR-22-418  
             Sentencing Letter

Dear Judge Russell,

     In advance of the Rule 11 proceeding scheduled for July 11, 2023, and in support of the defense's request for Mr. Taylor to be sentenced on that same day, I write to ask Your Honor to accept the parties' C plea agreement and sentence Mr. Taylor to a total term of 46 months' imprisonment in case numbers GLR-19-311 and GLR-22-418.

     The parties' jointly recommended sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing under 18 U.S.C. § 3553(a), as it is grounded in the applicable sentencing guidelines range, represents Mr. Taylor's longest term of incarceration, and will deter Mr. Taylor, a committed father, from ever breaking the law again.

### A. Procedural Background and C Plea Agreement

     In case number GLR-22-418, Mr. Taylor is charged with a single count of possession of a firearm as a prohibited person, in violation of 18 U.S.C. 922(g). He is charged in case number GLR-22-418 with violating the terms of his supervised release by committing a criminal offense and possessing a firearm – i.e., the § 922(g) offense.

     Mr. Taylor has been detained since his arrest for the firearm offense on October 26, 2022, or approximately eight months. He initially faced related state charges, but those charges were dropped in favor of federal prosecution on December 12, 2022. He first appeared in federal court on December 14, 2022, ECF No. 4 (GLR-22-418), and, at a detention hearing held two days later, he was ordered detained pending trial, Order, ECF No. 16 (GLR-22-418). He has been incarcerated at the Howard County Detention Center since his initial appearance.

1

On June 8, 2023, Mr. Taylor signed a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), which calls for a total sentence of imprisonment of 46 months – that is, a concurrent sentence of 46 months' imprisonment in the § 922(g) case and 6 months' imprisonment in the VOSR case.

### B. The Advisory Sentencing Guidelines

The advisory sentencing guidelines range that applies in the § 922(g) case (GLR-22-418) is 37 to 46 months' imprisonment. Pursuant to U.S.S.G. § 2K2.1, the base offense level is 20 because Mr. Taylor has sustained one prior conviction for a crime of violence. Following an anticipated 3-level reduction to account for Mr. Taylor's prompt acceptance of responsibility, the final adjusted offense level is 17. As Mr. Taylor currently falls into criminal history category IV, the guidelines range for the firearm offense is 37 to 46 months' imprisonment.

The advisory sentencing guidelines range that applies in the VOSR case (GLR-19-311) is 6 to 12 months' imprisonment. Pursuant to U.S.S.G. § 7B1.1, the firearm offense constitutes a "Grade B Violation." Because Mr. Taylor fell into criminal history category II at the time of his sentencing in July 2021, the resultant guidelines range for the VOSR offense, according to the Policy Statement under § 7B1.4, is 6 to 12 months' imprisonment.

### C. The Appropriate Sentence

In this and every adjudicated criminal case, the Court is required to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the statutory purposes of sentencing: just punishment, specific and general deterrence, and rehabilitation. *See* 18 U.S.C. § 3553(a). Here, that sentence is 46 months' imprisonment in the § 922(g) case and 6 months' imprisonment in the VOSR case, to run concurrently.

> **1. The parties' recommended sentence appropriately punishes Mr. Taylor and deters him from future criminal conduct, as it is grounded in the advisory guidelines range and represents Mr. Taylor's longest period of incarceration.**

The parties' recommended sentence falls within the aggregate guidelines range that applies here, or 43 to 58 months' imprisonment. While our recommendation currently sits at the lower end of the now-applicable aggregate range, come November, when amendments to the Sentencing Guidelines are slated to take effect, our recommendation will sit at the higher end of the then-applicable aggregate range of 36 to 49 months' imprisonment. That is because the Sentencing Commission has adopted an amendment to § 4A1.1, which precludes the addition of "status points" for persons whose total criminal history score under § 4A1.1(a)-(c) is less than seven points. *See Adopted Amendments (effective November 1, 2023)*, U.S. Sentencing Commission, at 77-78, 81-82 (last accessed June 29, 2023).[1] This amendment would apply to

---

[1] https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (noting the Commission's finding "that status points add little to the overall predictive value associated with the criminal history score) (citation omitted).

2

Mr. Taylor, and it would operate to reduce his criminal history category from IV to III, thereby reducing the guidelines range for the firearm offense to 30 to 37 months' imprisonment.

The parties recommended sentence also represents Mr. Taylor's longest-ever sentence of incarceration and is 18 months longer than his last sentence of incarceration. *See* PSR (GLR-19-311) at ¶¶ 31-32; Judgment (GLR-19-311), ECF No. 24. Accordingly, our recommendation reflects the seriousness of Mr. Taylor's offense and sends a strong deterrent message to Mr. Taylor to never break the law again.

Mr. Taylor, 33, is a loving father who deeply regrets the time he has been separated from his children due to his offense. Before his arrest in October 2022, Mr. Taylor was the primary caregiver for his three-year-old daughter Darryn and his seven-year-old stepson Dorcell, as their mother Morgan Maclin works full-time. Darrin also enjoyed a good relationship with his older daughter, Darrielle. Ms. Maclin shared with undersigned counsel that Mr. Taylor is an active and attentive father, and that his absence has been hard for her, for Mr. Taylor, and, most especially, for their daughter Darryn. Darryn talks about Mr. Taylor often and, while she does not know of the circumstances of his absence, she is curious about it. Over the past eight months, Mr. Taylor's contact with Darryn has mostly been limited to half-hour Skype visits and occasional in-person visits, when they are separated by plexiglass. This is in stark contrast to his role in Darryn's life between early 2021 and his arrest in late 2022, when he saw her every day, helped her learn to read and spell, took her to nearby playgrounds, and cooked her meals.

 

Mr. Taylor and his daughters, Darryn and Darrielle

Mr. Taylor is motivated to never again be absent from his children's lives, and a sentence beyond 46 months' incarceration is not necessary to deter him from future criminal activity.

2. **A sentence of imprisonment longer than 46 months is unnecessary for rehabilitative purposes.**

To the extent possible, Mr. Taylor has used the time he has spent in pretrial detention to position himself for a productive and law-abiding life upon release. While detained at HCDC,

3

Mr. Taylor has taken GED classes, Monday through Thursday, from 7:45 until 10:00 a.m. He recently took the Social Studies portion of the GED exam and passed it – an achievement that brings an ear-to-ear smile to his face. Ms. Maclin shared that Mr. Taylor has talked with her about his goal of obtaining his GED, along with his excitement about passing the Social Studies exam. In addition to GED classes, Mr. Taylor has participated in HCDC's religious services, including weekly worship and bible study.

There is no need to keep Mr. Taylor in federal prison to achieve any of the purposes of sentencing. And a lengthier prison sentence certainly would not facilitate his rehabilitation and successful reentry. While Mr. Taylor intends to use his time in BOP custody as productively as possible by participating in rehabilitative and vocational programming, the options that will be available to him inside federal prison are limited. In contrast, while on supervised release, Mr. Taylor will have access to tailored mental health treatment and vocational services, which will help him heal from past trauma and move beyond his mistakes.

While Mr. Taylor's background does not excuse his wrongful decision to illegally possess a firearm, it does shed light on the importance of community-based interventions to promote his successful reentry. Mr. Taylor was born and raised in Baltimore. PSR (GLR-19-311), at ¶ 57. As a child growing up in the Park Heights neighborhood, he regularly witnessed the devastation wrought by poverty, addiction, and violence. His mother, with whom he maintains a close relationship, has battled addiction for his entire life. *See id.* Mr. Taylor left school before finishing the 9th grade, *id.* at ¶ 64, and, as an adult, he has struggled to find work without a degree and with a criminal record. Although he has participated in substance abuse treatment, he has never received dedicated mental health treatment. *See id.* at ¶ 62. He has expressed a belief that such treatment would be valuable, along with a willingness to participate in it while on supervised release. *See id.*

In sum, the rehabilitative ends of sentencing are best served through a period of supervised release with appropriate supports, including mental health treatment and vocational services, rather than imprisonment beyond 46 months.

### 3. The parties' recommended sentence promotes general deterrence.

Mr. Taylor's federal prosecution, in and of itself, will deter others from committing similar crimes, such that a sentence of more than 46 months' imprisonment is unnecessary to achieve that goal. It is well-recognized, "in virtually every deterrence study to date, [that] the perceived *certainty* of punishment [is] more important than the perceived *severity*." Ray Paternoster, How Much Do We Really Know About Criminal Deterrence?, 100 J. Crim. L. & Criminology 765, 817 (2010)[2]; Five Things About Deterrence, Nat'l Institute of Justice (Jun. 5, 2016).[3] Indeed, severity increases are "seldom if ever crime preventatives." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 29 (2006).

---

[2]https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7363&context=jclc

[3]https://nij.ojp.gov/topics/articles/five-things-about-deterrence

The government's prosecution of Mr. Taylor signals to the community-at-large that illegal gun possession will be prosecuted in federal court, where penalties under the law and the guidelines may be harsher than they are in state court.

**D. Conclusion**

For the reasons explained herein and during the upcoming proceeding, we respectfully ask the Court to accept the parties' C plea agreement and sentence Mr. Taylor to a total term of 46 months' imprisonment in case numbers GLR-19-311 and GLR-22-418.

    Respectfully submitted,

    /s/
    Courtney D. Francik
    Assistant Federal Public Defender